# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT MORISSETTE, | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No. 14-10246-DJC |
| SUPERINTENDENT OF MCI CEDAR JUNCTION, et al., | ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**        August 7, 2014

For the reasons set forth below, the Court: (1) directs the clerk to correct plaintiff's address on the court's docket; (2) reverses its order of February 3, 2014 denying plaintiff's Motion to Proceed *in forma pauperis*; (3) grants plaintiff's Motion to Proceed *in forma pauperis*; (4) directs dismissal of the complaint unless plaintiff files an amended complaint curing the pleading deficiencies noted below; and (5) orders that no summonses shall issue until further Order of the Court.

## BACKGROUND

On February 3, 2014, plaintiff Albert Morissette, a Boston resident who had been incarcerated by the Massachusetts Department of Correction, filed a civil rights complaint against the Superintendent of MCI Cedar Junction and the Office of the Commissioner of the Massachusetts Department of Correction. All events alleged in the complaint occurred while plaintiff was incarcerated at MCI Cedar Junction. With his complaint, plaintiff filed a Motion to proceed *in forma pauperis*.

The clerk entered plaintiff's address on the docket at a correctional institution despite the fact that the category sheet accompanying the complaint listed a mailing address in Boston. Because it appeared that plaintiff was still incarcerated, the Court denied without prejudice his Motion to Proceed *in forma pauperis* because it was not accompanied by a copy of his prison account

statement. Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the filing fee, notwithstanding the grant of *in forma pauperis* status.

The clerk mailed copies of the Procedural Order to the prison treasurer as well as plaintiff at a prison address. Although the copy mailed to plaintiff was returned as undeliverable, the prison treasurer responded with a letter explaining that Mr. Morissette had been released on January 22, 2014. The letter included a copy of plaintiff's prison account statement for the period encompassing August 19, 2013 through February 19, 2014.

Because plaintiff was not incarcerated when the Motion to Proceed *in forma pauperis* was filed, the Court has reexamined that motion.

## DISCUSSION

### I. Motion to Proceed In Forma Pauperis

Morissette filed his complaint and motion to proceed *in forma pauperis* less than two weeks after his release from prison. Because plaintiff was not incarcerated at the time of filing, a copy of his prison account statement was not required. Plaintiff's motion indicates that he had no source of income and owned no property. Based upon this financial record, the Court now grants the Motion to Proceed *in forma pauperis* and vacates its earlier order to the contrary.

### II. Review

Because Morissette is proceeding *in forma pauperis*, the Court will review his complaint to determine if it satisfies the substantive requirements of the federal *in forma pauperis* statute. See 28 U.S.C. § 1915. Section 1915 of title 28 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2); Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

When examining the sufficiency of the pleadings, the court considers whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is " 'plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. at 678 (quotation marks omitted)). A plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement. Fed.R.Civ.P. 8(a). However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 556 U.S. at 678. Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice. Iqbal, 556 U.S. at 678. See also Ocasio–Hernandez v. Fortuno–Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Finally, in screening plaintiff's complaint, the Court recognizes that *pro se* pleadings are construed generously. Haines v. Kerner, 404 U.S. 519, 520 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir.2004). Even with this generous reading, plaintiff's complaint is subject to dismissal for the reasons stated below.

### III. Plaintiff's Complaint Fails to State a Claim Upon Which Relief May be Granted

Plaintiff brings this action pursuant to 18 U.S.C. § 241; 42 U.S.C. §§ 1981, 1983, 1985, 15601; and various state laws for violations that are alleged to have taken place during his confinement at MCI Cedar Junction. Plaintiff alleges that he entered MCI Cedar Junction on July 21, 2011. Upon his arrival, he informed officials that he was sexually assaulted in 1998 while at Southeastern Correctional Center, and plaintiff was then placed on single bunk status.

On November 6, 2011, plaintiff filed a grievance against Correctional Officer Wilson based upon plaintiff's belief that he was wrongfully denied a particular work detail based upon his sexual orientation. Plaintiff alleges that on November 12, 2011, Officer Boynton filed a disciplinary report

in retaliation for plaintiff's filing a grievance against Officer Wilson. The same day, on November 12, 2011, plaintiff filed a grievance against Officer Boynton.

Two days later, on November 14, 2011, plaintiff was moved to cell 210, which he alleges is away from the view of the camera and Officer's booth. On December 25, 2011, plaintiff was sexually assaulted by another inmate who entered his cell, cell 210. Plaintiff reported the assault. After being seen at the Health Services Unit, he was taken to Beth Israel Hospital. The following day, plaintiff was returned MCI Cedar Junction and held in the Health Services Unit. On January 4, 2012, plaintiff was transferred to NCCI Gardner. On June 7 2012, plaintiff was visited by a member of the Norfolk District Attorney's Office.

Plaintiff complains that the two defendants failed to protect him from harm and conspired to violate plaintiff's constitutional rights. Plaintiff seeks a declaratory judgment as well as equitable and injunctive relief.

### A. Criminal Conspiracy Against Rights

To the extent plaintiff brings this action pursuant to 18 U.S.C. § 241 (conspiracy against rights), he cannot, as a private citizen, bring suit under this criminal statute. Plaintiff does not have standing to bring a criminal action because no statute authorizes him to do so. Kennan v. McGrath, 328 F.2d 610, 611 (1st Cir. 1964) (per curiam); accord Cok v. Costentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam)(stating that only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242). Similarly, private individuals have no standing to prosecute the criminal laws of the Commonwealth. See Bunker Hill Distributing Inc. v. District Attorney for the Suffolk District, 376 Mass. 142, 147 (1978) ("the application of criminal statutes in the first instance generally lies with the public prosecutor").

### B. Prison Rape Elimination Act

To the extent plaintiff asserts a claim under the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601 et seq., (Count V) the PREA does not grant prisoners any specific rights. "[E]very court to address the issue" has held that the PREA does not allow a private cause

4

of action. Chao v. Ballista, 772 F. Supp. 2d 337, 341 n. 2 (D. Mass. 2011) (internal citations omitted); see also Nestor v. Dir. of Northeast Region Bureau of Prisons, No. 11–4683, 2012 WL 6691791, at *3 (D.N.J. Dec.20, 2012) (granting summary judgment to defendants on the plaintiff's attempt to recover under the Prison Rape Elimination Act because it does not create a private cause of action). The PREA constitutes a record of congressional finding and does not create a private right of action. Rasheed v. D'Antonio, No. 10-11253-GAO, 2011 WL 4382097, at *19 (D. Mass. Aug 1, 2011).

C. The Civil Rights Act, 42 U.S.C. § 1981

Plaintiff alleges that his claim arises under 42 U.S .C. § 1981 which protects the right of all persons within the United States to make and enforce contracts without respect to race. 42 U.S.C. § 1981; Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475 (2006). This right offers relief from intentional racial discrimination that impairs or terminates an existing contractual relationship. Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341, 346 (1st Cir.1995) (citations omitted). Although plaintiff alleges that he was denied a work based upon his sexual orientation, there are no allegations of racial animus. Because the plain language of the Section 1981 pertains to protection against racial discrimination, plaintiff's claim under Section 1981 is subject to dismissal.

D. The Civil Rights Act, 42 U.S.C. § 1983

Plaintiff's Section 1983 claims (which he frames as violations of substantive and procedural due process, equal protection and civil rights violations) against the Superintendent and Office of the Commissioner are subject to dismissal because nowhere in the complaint does he allege facts indicating that any action by these defendants injured him.

Plaintiff alleges that the Superintendent is "directly responsible for the care, custody and treatment of all persons imprisoned at 'Walpole', the enforcement of all regulations, policies and rules promulgated by the DOC and for ensuring that the prison is operated in accordance with all appropriate state and federal laws." Compl., ¶ 4. As to the Office of the Commissioner of the Massachusetts Department of Correction, plaintiff alleges that "the 'Commissioner' was responsible

5

for an agency comprised of 17 Correctional facilities, housing over 10,000 inmates, an operating budge of approximately 400 million dollars and about 5,200 employees (approximately 4,000 of whom are correctional officers)." Id. at ¶ 5.

The Supreme Court decision in Iqbal makes clear that these type of allegations against officials such as the Superintendent and the Office of the Commissioner are insufficient to support a theory of supervisory liability. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). "Section 1983 does not impose purely supervisory liability; it aims at persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrongdoing may be held liable." Cordero-Suarez v. Rodriguez, 689 F.3d 77, 82 (1st Cir. 2012) (quoting Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007) (internal quotation marks and citations omitted)). The First Circuit has repeatedly held that broad allegations against high-ranking government officials fail to state a claim. See Feliciano–Hernández v. Pereira–Castillo, 663 F.3d 527, 534 (1st Cir. 2011) (citing Soto–Torres v. Fraticelli, 654 F.3d 153, 160 (1st Cir. 2011) (allegations against FBI Special Agent in Charge of field office insufficient under Iqbal because complaint failed to allege facts showing defendant had knowledge of alleged violations of constitutional rights); Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011) (Regional Medical Director of Correctional Medical Services in Maine cannot be held responsible for the conduct of his subordinates under a theory of respondeat superior); Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) (allegations against governor insufficient under Iqbal because complaint failed to allege facts showing governor participated in violation of constitutional rights); Maldonado v. Fontanes, 568 F.3d 263, 274–75 (1st Cir. 2009) (allegations against mayor insufficient under Iqbal because complaint failed to allege facts showing an "affirmative link" between mayor and alleged violations of constitutional rights)).

Here, plaintiff has not set forth any factual basis for direct liability of the Superintendent or

the Office of the Commissioner. Thus, the Section 1983 claims fail as a matter of law.

      E.      Civil Conspiracy to Violate Civil Rights, 42 U.S.C. § 1985

Section 1985 of title 42 concerns conspiracies to violate civil rights. Section 1985(1) deals with conspiracies to prevent persons from holding office or performing duties of a public office. Section 1985(2) pertains to conspiracies to obstruct justice or to interfere with witnesses. Section 1985(3) deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Because plaintiff has made no allegation which even inferentially indicates that either of the defendants have conspired against him to prevent the holding or performance of duties related to a public office, to obstruct justice or that the defendants were motivated by any class-based, invidiously discriminatory animus, plaintiff's claims under Section 1985 must be dismissed. Siaca v. Autoridad de Acueductos y Alcantarillados de Puerto Rico, 160 F. Supp. 2d 188, 203-204 (D. P.R. 2001); see Romero-Barcelo v. Hernandez Agosto, 75 F.3d 23, 35 (1st Cir. 1996) (conclusory statements are insufficient to support a § 1985(3) claim); accord Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977).

      F.      Intentional Infliction of Emotional Distress

In addition to his claims under federal law, plaintiff asserts claims for the intentional infliction of emotional distress (Count IV). Compl., ¶¶ 28-30. Plaintiff alleges that the defendants "behaved outrageously in intentionally covering up a crime(s), conspiring and using their unprofessional manner (i.e., their lack of investigation) and continues to handle their investigation ('PREA' - Prison Rape Elimination Act)." Id. at ¶ 29. Plaintiff contends that civilized society doesn't tolerate "such acts of summary re-victimizing helpless persons in their custody." Id. at ¶ 30.

"Under Massachusetts's law, to state a claim for intentional infliction of emotional distress the claimant must allege '(1) that the actor intended to inflict emotional distress or that he knew or

7

should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.'" Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 53 (D. Mass. 2013) (Casper, J) (citing Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (quoting Agis v. Howard Johnson, Co., 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976))).

Here, the complaint fails to state a cognizable claim for intentional infliction of emotional distress against the defendants. Although plaintiff alleges that the defendants "behaved outrageously", there are no factual allegations, beyond the conclusory claims, that the Superintendent and Commissioner, as supervisors, instituted a policy or practice that condoned any intentional conduct, much less conduct by them that exceeds all bounds of human decency as is required to sustain a claim for intentional infliction of emotional distress.

**ORDER**

Accordingly, it is hereby ORDERED that:

1) The Procedural Order of February 3, 2014 is reversed and plaintiff's Motion to Proceed *in forma pauperis* is granted;

2) The clerk shall correct plaintiff's address on the docket;

3) If Plaintiff wishes to proceed with this action, he must, within 35 days of the date of this Order, file an Amended Complaint curing the pleading deficiencies noted herein. If he fails to do so, this case will be dismissed for reasons stated above; and

4) No summonses shall issue pending further Order of the Court.

**SO ORDERED.**

                                                    /s/ Denise J. Casper
                                                    Denise J. Casper
                                                    United States District Judge